CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
12/12/2019

JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez

DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Court No. 5:19-cv-00094 |
| | ) |
| $31,520 IN U.S. CURRENCY | ) |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Now comes the plaintiff, United States of America, by and through its attorney, Krista

Consiglio Frith, Assistant United States Attorney, and brings this Complaint and alleges as follows

in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to forfeit and condemn certain personal property

assets to the use and benefit of the United States, pursuant to 21 U.S.C. § 881(a)(6), for violations

of 21 U.S.C. § 841.

### THE DEFENDANT *IN REM*

2. The defendant property consists of the following property:

(a) Approximately $31,520.00 in U.S. Currency that was seized from Terrell

Williams on June 23, 2018 at the following location: 323 Florence Avenue, Apt. A, Waynesboro,

VA, and is presently in the custody of the Waynesboro Police Department in the evidence vault at

250 S. Wayne Ave, Waynesboro, VA 22980.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under

28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4.  This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5.  Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1) because the acts giving rise to this forfeiture occurred in this district. Venue is also proper pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6.  Upon the filing of this Complaint, the plaintiff requests that the Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b)(ii), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

BASIS FOR FORFEITURE

7.  The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as property which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of 21 U.S.C. § 841and/or constitutes or is derived from proceeds traceable to a violation thereof.

FACTS

8.  The facts supporting this Complaint are stated in the attached Declaration of Special Agent Tami Ketcham, Homeland Security Investigations, and are incorporated by reference herein.

WHEREFORE, the United States of America respectfully requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule G(3)(b); that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such

2

other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

THOMAS T. CULLEN

United States Attorney

/Krista Consiglio Frith
Assistant United States Attorney
Virginia Bar No. 89088
310 First Street, S.W., Room 906
Roanoke, VA 24011
Phone: (540)857-2250
Fax: (540)857-2614
krista.frith@usdoj.gov

3

<u>VERIFICATION</u>

I am a Special Agent of Homeland Security Investigations, and one of the agents assigned the responsibility for the above-captioned matter. I have read the contents of the foregoing Complaint for Forfeiture, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of December, 2019.

Tami Ketcham
Special Agent, Homeland Security Investigations

4

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$31,502 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   City of Waynesboro
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krista Consiglio Frith, AUSA
310 First Street, S.W. Room 906
Roanoke, VA 24011 540-857-2250

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government Plaintiff
☐ 3   Federal Question *(U.S. Government Not a Party)*
☐ 2   U.S. Government Defendant
☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)
Brief description of cause:
Civil Forfeiture

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
12/12/2019

SIGNATURE OF ATTORNEY OF RECORD
s/Krista Consiglio Frith

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

5:19-cv-00094

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF VIRGINIA

HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No.  5:19-cv-00094 |
| | ) | |
| $31,520 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF SPECIAL AGENT TAMI KETCHAM

I, Tami Ketcham, being duly sworn, depose and state as follows:

1.      I am a Special Agent employed by the United States Department of Homeland

Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations

("HSI"). I am currently assigned to the HSI office in Harrisonburg, Virginia. I have been a

Special Agent with ICE HSI since August 2010.

2.      My duties as a Special Agent include, but are not limited to, investigating

violations of federal criminal statutes involving financial fraud, money laundering, and drug-

smuggling conspiracies pursuant to Titles 18 and 21 of the United States Code. I have

participated in the execution of subpoenas, search warrants and arrest warrants. I am a graduate

of Federal Law Enforcement Center's Criminal Investigator Training Program and have also

received additional HSI investigative training some of which has been related to drug trafficking

investigations.

3.      The facts and information contained in this affidavit are based upon my personal

knowledge as well as the observations of other officers and agents involved in this investigation.

All observations not personally made by me were related to me by the individuals who made them or were conveyed to me by my review of records, documents, and other evidence obtained during the course of this investigation.

4.        This affidavit contains information necessary to support a complaint relating to $31,520 in U.S. currency which (a) was involved in or facilitated illegal activity and/or (b) represents the proceeds of illegal activity in violation of 21 U.S.C. § 841 and is therefore subject to forfeiture under 21 U.S.C. § 881(a)(6).

5.        On June 20, 2018, HSI Albuquerque Task Force Officer (TFO) L. Palomares from the New Mexico State Police was conducting interdiction operations on Interstate 40 eastbound, near mile marker 115, east of Mesita, New Mexico. TFO Palomares observed a tractor-trailer car hauler fail to maintain its lane and cross onto the shoulder. TFO Palomares stopped the tractor-trailer car hauler. During the encounter, TFO Palomares requested to review the bills of lading, and discovered that one bill appeared suspicious because the contact person's name and phone number listed for the vehicle pick-up (shipper) and delivery (receiver) were identical. TFO Palomares asked for and received consent from the tractor-trailer driver to conduct a search. TFO Palomares and his K-9 conducted a search, and the K-9 alerted to a black Jeep Grand Cherokee bearing California license plate number 5MBE429 and vehicle identification number 1J8HR48N15C592149 ("Jeep"). Law enforcement then searched the Jeep, which yielded 23 packages of a crystal substance wrapped in black tape and clear cellophane; the packages were located inside a spare tire of the Jeep. HSI Albuquerque special agents responded and interviewed the driver. HSI Albuquerque Special Agent Andrew Sneden field tested the seized crystal substance, and it tested positive for the characteristics of methamphetamine. The 23 packages of a crystal substance were later sent to the Drug Enforcement Administration

2

laboratory and in September 2018, the laboratory identified methamphetamine was confirmed in 15 units tested of the 23 units received.

6.     The suspicious bill of lading reviewed by TFO Palomares listed a 2003 Ford Explorer with an individual named Lupe Villalobos and telephone number (760) 561-2413 ("Villalobos' phone"). The bill of lading listed Villalobos as the contact person for both the vehicle pick-up (shipper) and delivery (receiver) and provided a vehicle delivery address of 830 King Avenue, Waynesboro, Virginia.

7.     The driver of the tractor-trailer car hauler denied knowledge of the contents of the Jeep and spare tire and agreed to cooperate with law enforcement.  The driver advised law enforcement that he met with a customer named Mario Perez at a truck stop in Victorville, California to take delivery of a Ford Explorer, but Perez instead presented the Jeep.  When the driver questioned Perez, Perez instructed the driver to take the Jeep.

8.     A search of California motor vehicle records found the registered owner of the Jeep was an individual named Felipe Carranza Lara of Perris, California, who sold the vehicle on or about May 6, 2018, to an individual named Javier Dias of Hesperia, California.

9.     To actively track the progress of the Jeep, an electronic tracker was placed on the Jeep, which was located on the tractor-trailer car hauler that was en route to the Western District of Virginia.

10.     On June 23, 2018, the driver of the tractor-trailer car hauler carrying the Jeep arrived within the Western District of Virginia.  HSI Special Agents removed the spare tire from the Jeep during which time they observed 10 additional packages of a substance wrapped in black tape and clear cellophane, which later field tested positive for characteristics of methamphetamine. The 10 packages of a substance were later sent to the Drug Enforcement

3

Administration laboratory and in August 2018, the laboratory identified methamphetamine was confirmed in nine of the units tested of the 10 units received.

11.     On June 23, 2018, the spare tire of the Jeep was replaced by law enforcement with an empty uncut tire as the spare tire in which the methamphetamine was discovered had been cut open by law enforcement in New Mexico.  The driver informed law enforcement that he could not deliver the Jeep to the vehicle delivery address located at 830 King Avenue, Waynesboro, VA; therefore, a new delivery location for the Jeep was identified, which was Quarles Feet Filling Station ("Quarles") at 790 South Delphine Avenue, Waynesboro, VA.

12.     On June 23, 2018, the tractor-trailer driver made contact with a male by calling Villalobos' phone, which was the contact phone number listed for the delivery of the Jeep.  After the call, law enforcement observed a Hispanic male (subsequently identified as Miguel Moreno) leave 830 King Avenue, Waynesboro, VA, driving a sports car bearing Virginia license plate UZW9042 ("sports car").  The registered owner of this vehicle was Miguel Moreno ("Moreno"), 830 King Avenue, Waynesboro, VA.  Law enforcement observed the sports car arrive at Quarles, remain at the location for a short period of time then leave Quarles.  Law enforcement then observed a cab arrive at Quarles.  A Hispanic female exited the cab and drove the Jeep away from Quarles but then returned to Quarles within a few minutes.  Law enforcement then observed Moreno arrive at Quarles in his sports car.  Law enforcement observed Moreno and the Hispanic female from the Jeep interact outside the vehicles at the rear of the Jeep.  Law Enforcement then observed Moreno remove the spare tire from the Jeep and place it in the sports car.  Moreno subsequently got into his sports car and drove away.

13.     On June 23, 2018, approximately 31 minutes after law enforcement observed the sports car leave Quarles, law enforcement observed the sports car, identified above, parked at

4

323 Florence Avenue, Waynesboro, VA. Law enforcement maintained observation of the sports car and observed two males, Moreno and a male (subsequently identified as Terrell Williams) take a tire out of Apartment A, located at 323 Florence Avenue, Waynesboro, VA, put the tire in the trunk of Moreno's sports car and return to Apartment A. Several minutes later, law enforcement observed Moreno return to Moreno's sports car and remove the tire from the trunk and take the tire into Apartment A. Several minutes later, law enforcement observed Moreno take the tire from Apartment A and place the tire back in the trunk of Moreno's sports car, during which time law enforcement observed the tire had been cut. Moreno entered the driver seat of the sports car and Terrell Williams ("Williams") entered the passenger seat of the same car. Moreno dropped off Williams and the sports car was taken to 830 King Avenue, Waynesboro, VA. Law enforcement observed Moreno talking on a cellular telephone near his sports car located at 830 King Avenue, during which time they positively identified the driver as Miguel Moreno. Law enforcement observed Williams during the execution of a search warrant that occurred later in the day on June 23, 2018, at Apartment A, located at 323 Florence Avenue, Waynesboro, VA, and as a result they were able to positively identify Terrell Williams as the person that assisted Moreno with the tire and was the passenger of the sports car.

14. On June 23, 2018, law enforcement obtained and executed a search warrant at 323 Florence Avenue, Apt. A, Waynesboro, VA. During the execution of the warrant, law enforcement smelled a strong odor of marijuana throughout the entire apartment and observed what appeared to be marijuana present on a coffee table in the living room area. The apartment was occupied by one resident who was identified as Williams. Law enforcement observed Williams sitting in the living room area of the residence. Williams was located near a back pack that contained a large amount of US currency that consisted of 278-$100 bills, 18-$50 bills, 135-

5

$20 bills, 1-$10 bill and 110-$1 bills totaling $31, 520. The currency was laying loose inside the main compartment of the back pack. Post Miranda Warning, Williams estimated the backpack contained approximately $31,000, which Williams stated was money he had saved over the past four to five years. Williams reported he was unemployed and had been unemployed for the past four to five months. Williams reported he was last employed with McDonald's as a Manager.

15. During the execution of the search warrant at 323 Florence Avenue, Apt. A, Waynesboro, VA, law enforcement informed Williams they were executing the warrant because law enforcement observed an individual bring a spare tire in the residence that was loaded with a large amount of methamphetamine. Williams reported he helped his friend (Moreno) bring the spare tire into the residence but he did not know what was in the tire or what was supposed to be in the tire. Williams reported Moreno called Williams and asked if he could stop by Williams home. Williams reported he did not know why Moreno wanted to stop by his home but Williams stated when Moreno stopped by Moreno and Williams usually got high together. Williams reported he held the door to the residence open to enable Moreno to carry the tire into the home. Williams reported he went to the bathroom once the tire was brought into the home and when Williams came out of the bathroom, he observed Moreno had cut open the tire. Williams reported he did not know why Moreno cut open the tire. Williams reported that his friends did not usually bring tires into his home but it did not seem strange to him that a tire was brought into his home because Williams' friends often bring stuff into his home. Williams reported he has never had a friend bring a tire into his home in the past. Williams claimed he was not going to use the money in the back pack to pay for the methamphetamine that was to arrive in the tire. Williams again stated he had been saving the money for four or five years. Williams stated he did not trust putting money in a bank.

6

16. During the execution of the search warrant at 323 Florence Avenue, Apt. A, Waynesboro, VA, law enforcement found two large zip lock bags that contained a white powdery substance and a set of functioning digital scales. The white powdery substance field tested positive for cocaine. Williams informed law enforcement that the bags and scales were left in his room in September 2017, when law enforcement executed a previous search warrant as his home. Williams claimed he did not throw the bags and scale away after that search warrant was concluded.

17. During the search warrant conducted at 323 Florence Avenue, Apt. A, Waynesboro, VA, law enforcement seized: $31,520, multiple smart phone devices, a green leafy substance suspected to be marijuana, two zip lock bags with residue, digital scales, packaging materials, two knives and a tire iron. The bags containing residue and the green leafy substance were sent to the Commonwealth of Virginia and in November 2018, one bag tested by the laboratory was found to contain methamphetamine residue and the green leafy substance tested by the laboratory was found to be marijuana.

18. Upon conclusion of the search warrant conducted at 323 Florence Avenue, Apt. A, Waynesboro, VA, Williams was placed under arrest for felony violation of section 18.2-248.1, Code of Virginia: sell, give, or distribute more than one-half ounce but less than five pounds of marijuana and felony violation of section 18.2-250, Code of Virginia: knowingly or intentionally possess cocaine, a controlled substance classified in schedule I or II, not obtained directly from or pursuant to, a valid prescription or order from practitioner while acting in the course of professional practice, or not authorized by the Drug Control Act. The violation of 18.2-248.1 was later reduced from a felony to a misdemeanor and Williams was found guilty of

7

the charge on February 26, 2019. The violation of 18.2-250 was nolle prossequi on February 26, 2019.

19. On June 23, 2018, law enforcement obtained and executed a search warrant at 830 King Avenue, Waynesboro, VA. While being interviewed by law enforcement, Moreno's black iPhone 10 rang multiple times displaying phone number (540) 285-0150. During the interview Moreno initially indicated he did not know who was associated with the phone number. Law enforcement confronted Moreno as it was observed Moreno sent text messages of photographs of a tire on June 23, 2018 to the phone number. Moreno then disclosed the phone number was associated with one of his brother's whom he eventually confirmed was Gallegos Hernandez. Law enforcement was aware of Gallegos Hernandez because they previously received information indicating that Gallegos Hernandez was recruiting individuals within the Waynesboro, VA area to help him distribute methamphetamine. Multiple cellular phones belonging to Moreno were seized from 830 King Avenue, Waynesboro, VA, which included but were not limited to: the black iPhone 10, a silver Samsung, and a black ZTE.

20. During the interview conducted with Moreno on June 23, 2018, Moreno provided varying explanations regarding instructions he received about a pick-up to be made from the Jeep. At one point during the interview Moreno stated that Gallegos Hernandez provided him with instructions about a black Jeep and that he would be paid to pick something up on Saturday (June 23, 2018), Moreno claimed he was not told what he would be picking-up. Moreno also stated that he received a call on Saturday (June 23, 2018) morning from an unknown male and the caller also sent Moreno a text of where the Jeep was located. Moreno also provided varying explanations about whether he was instructed to cut open the spare tire he retrieved from the Jeep and what he thought was in the tire. Moreno ultimately admitted he received a kitchen knife that

8

had a black handle from Williams and he (Moreno) and Williams cut open the tire with the knife. Moreno reported he did not know specifically what was in the tire but thought it could be "weed" or some other type of drug. Moreno initially confirmed Williams was supposed to get a part of the contents of the tire. When law enforcement asked Moreno about the $30,000 in Williams's possession, Moreno then stated Williams was not supposed to get anything that was in the tire and Moreno claimed he did not know anything about the money that Williams had.

21. On or about June 25, 2018, law enforcement determined that Gallegos Hernandez was currently incarcerated at a Bureau of Prisons facility in Georgia. Gallego Hernandez was incarcerated due to a conviction for violating Title 21 United States Code 841(a)(1), Distribute 5 Grams or More of Methamphetamine (actual) and 18 United States Code 924(c)(1)(A), Possess a Firearm in Furtherance of a Drug Trafficking Crime.

22. On June 27, 2018, law enforcement obtained a search warrant to obtain all digital content contained on Moreno's cellular phones, which resulted in extractions of Moreno's seized iPhone 10, Samsung, and ZTE cellular phones.

a. A review of the extraction of Moreno's ZTE phone revealed that between the period of March 21, 2018, and June 10, 2018, calls and text messages occurred between Moreno's ZTE phone and Gallegos Hernandez's phone. Various text messages sent between the two phones contain references to names of people, locations, and money.

b. A review of the extraction of Moreno's Samsung phone revealed that between the period of June 10, 2018, and June 25, 2018, calls and text messages occurred between Moreno's Samsung phone and Gallegos Hernandez's phone. On June 23, 2018, the date the Jeep was delivered to Waynesboro, VA, multiple phone calls and text messages took place between Gallegos Hernandez's phone and Moreno's Samsung phone, specifically

9

at approximately 12:26 PM EDT, one text message was sent from Gallegos Hernandez's phone to the Moreno's Samsung phone that contained the Spanish language message, "Dime cuando ya", which means that the sender of the text message was asking the receiver of the text message to tell the sender when. In addition, between approximately 2:40 PM EDT and 2:44 PM EDT, three text messages were sent from Moreno's Samsung phone to Gallegos Hernandez's phone, which contained multiple photographs of a cut tire. A review of the extraction of Moreno's Samsung phone also revealed a video present on the phone with a date of June 23, 2015 and approximate time of 1:50 PM EDT. In the video recording, two people suspected to be Moreno and Williams, put their hands in a slit in the tire then a person suspected to be Moreno opened the tire along its length and indicated in Spanish, there was nothing. Also, in the recording, a person suspected to be Moreno said in English, under his breath, "Oh...fuck..." and he directed another individual, suspected to be Williams, who had another phone with the flashlight on to move the phone around.

c.     A review of the extraction of Moreno's Samsung phone revealed that on June 23, 2018, the date the Jeep was delivered to Waynesboro, VA, multiple phone calls and one text messages occurred between the Samsung phone and Villalobos' phone. Specifically, at approximately 12:50 PM EDT, one text message was sent from Villalobos' phone to the Samsung phone which contained the address, "790 S Delphine ave Waynesboro VA 22980," which is the address for Quarles, the pick-up location for the Jeep.

23.     On June 26, 2018, law enforcement obtained a search warrant for the fingerprint/thumbprint of Williams to unlock two smartphone devices that were seized from Williams's residence on June 23, 2018. On the same date, Williams was transported to the

Waynesboro Police Department. While at the Waynesboro Police Department law enforcement attempted to execute the warrant for the fingerprint/thumbprint of Williams to unlock his phone. Williams was advised about the search warrant and he asked to view the warrant. Law enforcement provided Williams with a copy of the warrant and allowed him to read it two different times. Law enforcement informed Williams if he did not cooperate with the warrant then he could be charged with obstruction. Williams was also informed several times if he did not cooperate with the warrant then law enforcement would hold his hands and attempt to unlock the phones. Williams stated he was not going to unlock the phones and he did not think law enforcement needed to see what was on his phones. Law enforcement held Williams's hands and attempted to place Williams's finger on the phones to unlock them. Williams continually pulled his hands away and curled his fingers to stop law enforcement from unlocking his phones. After several attempts, law enforcement stopped and explained to Williams that he would be charged with obstruction.

24.     On June 26, 2018, Williams was charged with misdemeanor violation of section 18.2-460, Code of Virginia: obstruct/resist without threats/force. On February 26, 2019, Williams was found guilty of the offense.

25.     On August 6, 2018, an interview was conducted with Moreno. During the interview Moreno admitted he was distributing methamphetamine to Vincent Rexrode ("Rexrode") and Williams. Moreno indicated he would give approximately half of the shipment on methamphetamine that he received to Rexrode and would give the other half to Williams for further distribution; Rexrode and Williams eventually paid Moreno for the methamphetamine they sold. Moreno reported that he communicated with Williams via cellular phone and Facebook Messenger. Moreno claimed Rexrode and Williams were not expecting to receive any

11

drugs from the spare tire that Moreno received on June 23, 2018. Moreno also claimed he did not know anything about the money that was in Williams's possession at the time of the search warrant that was executed on June 23, 2018.

26. On April 17, 2019, Gallegos Hernandez was interviewed by law enforcement. During the interview Gallegos Hernandez acknowledged that while in prison he used a cellular phone with the assigned phone number of (540) 285-0150, previously identified above as Gallegos Hernandez's phone. Gallegos Hernandez indicated he used the phone at various times during the period of March 2018 and June 2018 to contact various family members to include Moreno. Gallegos Hernandez confirmed he provided instructions to Moreno telling Moreno when drugs were coming, where Moreno needed to go to pick up drugs, and where Moreno needed to go to meet people to give them money that was obtained through the sale of drugs. Gallegos Hernandez confirmed he was involved with three or four multi-kilogram shipments of methamphetamine to Moreno, which included the June 2018 shipment in which Moreno was supposed to receive methamphetamine in a spare tire of the Jeep.

27. On June 5, 2019, law enforcement conducted an interview with Moreno to discuss information received during the April 2019 interview with Gallegos Hernandez. During the interview Moreno reported Williams was involved in the methamphetamine distribution conspiracy and Williams participated in at least three of five shipments of methamphetamine Moreno received or was due to receive.

28. On June 5, 2019, Moreno reported to law enforcement that Williams assisted Moreno with obtaining Moreno's third shipment of methamphetamine. The shipment consisted of four kilograms of methamphetamine and Williams received two kilograms of the methamphetamine for further distribution. Moreno reported he and Williams drove to Atlanta to

12

pick-up the methamphetamine and Williams was aware of the purpose of the trip. Moreno received a text message from Gallegos Hernandez with an address of an apartment complex. Moreno and Williams went to the address and met with a Hispanic male who gave Moreno a tomato box that contained four kilograms of methamphetamine. Upon receiving the methamphetamine, Moreno and Williams drove to a hotel and Williams rented a room under his name. Moreno could not remember the name of the hotel. Moreno and Williams took the methamphetamine to the hotel room where they proceeded to break down all of the methamphetamine. Moreno fronted Williams two of the four kilograms of methamphetamine for further distribution. The remaining two kilograms were reserved for Rexrode. Williams later paid Moreno a total of $26,000 for the two kilograms of methamphetamine he received at the hotel.

29.     On June 5, 2019, Moreno reported to law enforcement that he received his fourth shipment of methamphetamine by meeting a person at the Quality Inn in Waynesboro, VA where Moreno received approximately four kilograms of methamphetamine. Moreno gave two of the kilograms in bulk to Williams for further distribution for which Williams paid Moreno a total of $26,000 over time. Moreno gave the remaining two kilograms to Rexrode for further distribution. In addition, Moreno gave another individual identified as Javier Rocha an ounce or two ounces of methamphetamine.

30.     On June 5, 2019, Moreno reported to law enforcement the fifth shipment of methamphetamine Moreno was to receive was the shipment that was sent to Moreno in the tire in June 2018. Moreno spoke with Gallegos Hernandez who told Moreno the shipment was going be 10-20 kilograms of methamphetamine. When Moreno realized he was going to receive such a large shipment of methamphetamine, Moreno asked Rexrode to help him find a place to store the

13

methamphetamine. The plan was for Williams, who knew the shipment was coming, to store half of the shipment and for Moreno to store the other half of the shipment. Williams was aware that methamphetamine was coming in the shipment and Williams was due to receive more than four kilograms. Moreno planned to front half of the shipment to Williams. At that time, Williams owed Moreno $800.

31.    On an unknown date Williams submitted a letter to the City of Waynesboro Commonwealth Attorney's Office indicating the $31,520 seized by Waynesboro Police Department on June 23, 2018 was not related to the drug offenses that Williams was charged with. Williams asked that the civil forfeiture case of the money be continued until his criminal case within Waynesboro, VA was resolved.

32.    On October 31, 2019, Williams submitted an email with an attachment entitled "Benedict College Student Account Printout" to the City of Waynesboro Commonwealth Attorney's office. Williams provided the email and attachment in an attempt to prove he saved up the $31, 520. Williams indicated that the number listed in the column entitled "Foli" on the printout corresponded to a number assigned to a check Williams received from Benedict College. Williams indicated in the email that he added up the amounts listed for each check number and he determined he received $19,805.15 while at Benedict College during a six year time period (July 11, 2008 through March 30, 2014). I reviewed the "Benedict College Student Account Printout". Information contained on the print out does not actually indicate that Williams actually received checks listed in "Foli" in the amounts listed on the printout. Instead, it appears the check amounts may have actually been applied to the monthly balance that Williams owed to Benedict College. Williams did not provide any additional information to document that he cashed the checks.

14

33.  In the October 31, 2019 email, Williams also reported he received $2,861.18 from his mother, which she received from her car insurance company, attempting to prove that money was part of the $31,520 seized.  Williams indicated he could obtain proof of the $2,861.18; however, no additional information has been received.

34.  I identified that Williams had a criminal history, FBI# 268968DD3. The information was identified through the National Crime Information Center (NCIC).

| CHARGE DATE | CHARGE | DISPOSITION DATE | DISPOSITION CHARGE | DISPOSITION |
|---|---|---|---|---|
| 01/02/2009 | MISD-18.2-371 CONTRIBUTE TO DELINQUENCY OF MINOR | 03/06/2019 | MISD-18.2-371 CONTRIBUTE TO DELINQUENCY OF MINOR | GUILTY |
| 08/31/2014 | MISD-18.2-266 DWI: 1ST OFFENSE | 08/31/2014 | MISD-18.2-266 DWI: 1ST OFFENSE | GUILTY |
| 10/31/2015 | MISD-18.2-266 DWI: 2ND OFF W/IN 5Y | 07/19/2016 | MISD-18.2-266 DWI: 2ND OFF W/IN 5Y | GUILTY |
| 10/31/2015 | MISD-18.2-268.3 DWI: REFUSAL OF BLOOD OR BREATH TEST, 2 OFF | 07/19/2016 | MISD-18.2-268.3 DWI: REFUSAL OF BLOOD OR BREATH TEST, 2 OFF | NOLLE PROSSED |
| 05/03/2016 | MISD-19.2-82.1 FALSE IDENTIFY SELF TO LAW ENFORCEMENT | 07/02/2016 | MISD-19.2-82.1 FALSE IDENTIFY SELF TO LAW ENFORCEMENT | GUILTY |
| 02/0/2017 | MISD-18.2-271.1 ALCOHOL SAFETY PROGRAM VIOLATION | 01/09/2017 | MISD-18.2-271.1 ALCOHOL SAFETY PROGRAM VIOLATION | DISMISSED |
| 06/23/2018 | FELONY-18.2-248.1 MARIJUANA: SELL/GIVE/DIST 1/2 OZ - 5 LBS | 02/26/2019 | MISD-18.2-248.1 DRUGS: DISTRIB/PWI MARIJUANA <1/2 OZ 6 MOS | GUILTY |
| 06/23/2018 | FELONY 18.2-DRUGS: POSSESS SCH I OR II | 02/26/2019 | FELONY 18.2-DRUGS: POSSESS SCH I OR II | NOLLE PROSSED |
| 06/26/2018 | MISD-18.2-460 OBSTRUCT/RESIST: | 02/26/2019 | MISD-18.2-460 OBSTRUCT/RESIST: | GUILTY |

| | W/O THREATS/FORCE | | W/O THREATS/FORCE | |
|---|---|---|---|---|
| 06/26/2018 | FELONY-18.2-308.4 FIREARM: POSSESSION W/ SCH I OR II DRUG | 02/26/2019 | FELONY-18.2-308.4 FIREARM: POSSESSION W/ SCH I OR II DRUG | NOLLE PROSSED |

## CONCLUSION

36.     Based on the foregoing information, I believe probable cause exists to forfeit the seized $31,520 in U.S. currency. I submit that probable cause exists to believe that the subject property is forfeitable under 21 U.S.C. § 881(a)(6), as currency and other things of value constituting proceeds, facilitating property, or property furnished or intended to be furnished in exchange for a controlled substance.

Tami Ketcham, Special Agent
Homeland Security Investigations

16